IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TAMAR DEVELL HARVEY, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:18-cv-00097 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| D. LANDAUER, *et al.*, | ) |     United States District Judge |
|     Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This is a civil rights action, brought pursuant to 42 U.S.C. § 1983, in which plaintiff

Tamar Devell Harvey, a Virginia inmate proceeding *pro se*, asserts claims against numerous

defendants. This case has had an unusually high number of pretrial motions, likely because of

the number of defendants (currently nineteen),[1] the large number of claims, and Harvey's

tendency to file numerous motions and other documents, often requesting the same relief in

multiple filings. In any event, a number of motions (and issues raised by Harvey in non-

motions) are pending before the court at this time.[2] Some are addressed herein; others will be

addressed by separate orders.

## I.    BACKGROUND

In very general terms, Harvey's complaint alleges that the defendants violated his

constitutional rights when they subjected him to cruel and unusual living conditions, denied him

access to grievances, failed to protect him from assaults by other inmates, denied him adequate

medical and dental treatment following the assaults, and conspired to cover up an assault. After

---

[1] In this order and opinion, the court refers loosely to all defendants represented by the Virginia Office of the Attorney General as the "VDOC defendants" and to the three represented defendants who were employed at all relevant times by Mediko, Inc. (Shipp, Landauer, and Hamilton) as the "Mediko defendants."

[2] As to any motions currently referred to Judge Hoppe that the court rules on in this order, the court will withdraw the reference as to those motions.

one of the assaults, which occurred on July 21, 2017, Harvey was taken to the emergency room and received treatment for his injuries.

As relevant to Harvey's allegations concerning certain videoclips, which are addressed in this order, the court previously ordered that four videoclips requested by Harvey, to the extent they existed, be preserved and that copies be submitted to the court; two from July 21, 2017, and two from October 24, 2017. (Dkt. No. 44.) Thereafter, defendants submitted videoclips satisfying most of plaintiff's requests, although they provided an affidavit stating that there was no rapid eye video of Harvey's cell on October 24, 2017, and that none ever existed. (Dkt. Nos. 57, 58.)

## II. PENDING MOTIONS AND ISSUES

### A. Motion to Recuse

Prior to addressing any other motions in the case, the court turns to a recent filing by Harvey, which has been docketed as a "Notice of Complaint." (Dkt. No. 276.) The notice includes a letter, addressed to the chief judge of this court, in which Harvey complains that this court is biased against him and has engaged in "litigation misconduct." (*Id.* at 1.) The notice itself states that "Judge Dillon has 'willingly' gotten herself into hotwater [sic] due to her very own actions and inactions during this litigation." (*Id.*) In the attached letter, Harvey claims that the court intentionally ignored his properly filed "writ of mandamus" and that the court has "actively act[ed]" to "cover up" misconduct by the VDOC defendants and their counsel with regard to the videoclips. (Dkt. No. 276-1 at 1.) He also contends that the court has failed to hold an evidentiary hearing to address the alleged fraud on the court related to the videoclips, and that such an evidentiary hearing is "required." (*Id.* at 2.) He claims that the court's conduct was "illegal" and "constitutes . . . grounds for impeachment." (*Id.* at 1.)

The document does not explicitly seek recusal, but the court construes it as a request for recusal under 28 U.S.C. § 144 and/or § 455. Recusal under 28 U.S.C. § 455 is proper upon a showing that the judge "has a personal bias or prejudice concerning a party," *id.*, § 455(b)(1), or where her "impartiality might reasonably be questioned, *id.* § 455(a). Similarly, 28 U.S.C. § 144 requires a showing of "personal bias or prejudice" and also requires an affidavit from the party seeking recusal showing "the facts and the reasons for the belief that bias or prejudice exists" and a certificate of good faith from the moving party's counsel. *Id.*, § 144; *cf. Kidd v. Greyhound Lines, Inc.*, No. 3:04-cv-277, 2004 WL 3756420, at *2 (E.D. Va. Sept. 23, 2004) (discussing the procedural requirements as to a *pro se* party seeking recusal and deciding to "treat[] the submission as having met the procedural requirements" and instead "review[ing] the facts alleged for substantive legal sufficiency").

Even if the court were to treat the procedural requirements of both statutes as met, Harvey is not entitled to relief under either statute. First of all, the court is not biased against Harvey. *See Liteky v. United States*, 510 U.S. 540, 550 (1994) (defining bias as "a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, . . . rests upon knowledge that the subject ought not to possess[,] . . . [or] is excessive in degree . . . ."). The law is clear that judicial viewpoints arising from court proceedings are not a sufficient basis for recusal. *Id.* Here, the only support for Harvey's allegations are the court's rulings. Judicial rulings alone cannot support recusal, nor do they show bias. *Id.*

Importantly, Harvey does not set forth legally sufficient *facts* to require recusal. *See Sine v. Local. No. 992*, 882 F.2d 913, 914 (4th Cir. 1989); *United States v. Farkas*, 669 F. App'x 122, 123 (4th Cir. 2016) (explaining that a party seeking recusal must set forth "sufficiently definite

and particular" facts "to convince a reasonable person that bias exists") (quotation omitted). The "[m]ere intimations of prejudice or bias" that he provides "fall short of the required showing." *See Contract Mats. Processing, Inc. v. Kataleuna GmbH Catalysts*, 462 F. App'x 266, 279 (4th Cir. 2012) (citation omitted). The court should not—and will not—recuse itself simply "because of unsupported, irrational, or highly tenuous speculation" about bias. *See United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998). Harvey offers nothing more here.

For the foregoing reasons, and in accordance with 28 U.S.C. § 144 and § 455, Harvey's request for recusal (Dkt. No. 276) is DENIED.

As to Harvey's allegation that the court acted improperly in failing to include the docket number of Harvey's petition for writ of mandamus as a pending motion, that omission was an unintentional oversight, not an intentional decision to ignore his filing.[3] Moreover, even though the petition was not explicitly addressed, the issues raised in it were addressed by Judge Hoppe in his September 6, 2019 order. (Dkt. No. 196.) Harvey has now filed objections to that order, and the court addresses next both those objections and Harvey's petition for writ of mandamus.

**B. Objections to Judge Hoppe's September 6, 2019 Order & Motions Related to the Video Clips Submitted by VDOC Defendants, Including Harvey's "Petition for Writ of Mandamus"**

As noted, a number of discovery-related motions were resolved by Judge Hoppe in his September 6, 2019 order. Within fourteen days after he says he was served, Harvey filed

---

[3] In September 2019, this court issued an order resolving fifteen pending motions in the case, as well as addressing other issues, such as plaintiff's failure to timely serve some defendants. (Dkt. No. 195.) At the conclusion of its order, it noted that there were fourteen other motions related to discovery referred to Judge Hoppe that would be addressed separately by him. It then went on to list additional motions pending before the court, which consisted of four summary judgment motions. Harvey's petition for mandamus was not docketed as a "motion" and so did not appear on the court's report of pending motions, which it was using to determine which motions remained outstanding. As a result, the petition was inadvertently omitted from the list of pending discovery-related motions to be addressed by Judge Hoppe. Given the large number of filings by Harvey in this case and the fact that he often files multiple motions or documents seeking the same relief, it is unsurprising that one may have been overlooked.

objections to those rulings (Dkt. No. 221). The court now reviews the objections, but because the order ruled only on nondispositive matters, the court may modify or set aside the order only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

Harvey's objections all focus on Judge Hoppe's rulings with regard to his assertion that the video clips discussed above have been altered. In the order, Judge Hoppe reasoned as follows:

> In a series of motions, Harvey asks for relief based on his allegations that Defendants failed to produce video clips as ordered by the court in a July 24, 2018 order (Dkt. No. 44) and that they and their counsel, in particular, have tampered with clips they did produce and provided to the court. Specifically, Harvey alleges that defendants tampered with the video clips to remove all of the blood from his white t-shirt in several of the video clips. He also claims that they tampered with them to remove the "puddle of blood" on the floor referenced in one of the nurse's notes. He does not explain why he believes the clips should show the blood he references, or how defendants would have accomplished this tampering and the "faking" of the video clips. Moreover, the VDOC Defendants have provided sworn testimony regarding the videos produced in response to the court's order, as well as [an] acknowledgement form from Harvey that the footage was shown to him. (Dkt. No. 51-1, 57.) Additionally, the VDOC Defendants filed a response to Harvey's motion for sanctions which includes counsel's express representation "that the videos submitted to Harvey were in no way altered prior to their production" and that "counsel received the video footage from the facility and produced it to Harvey in response to the Court's order." (Dkt. No. 131.)

> In his first motion (Dkt No. 91), he asks for an order establishing all of the facts as raised deemed admitted as a sanction for alleged discovery abuses by the VDOC Defendants. In other motions, he again requests sanctions. (Dkt. Nos. 126, 174.) He also asks for an evidentiary hearing, at which defense counsel would be required to testify. (Dkt. Nos. 127, 128, 129.)

> Harvey's naked and speculative assertion that defendants or their counsel tampered with the [video clips], absent any additional information or proof supporting that assertion, is insufficient to refute defendants' sworn allegations or counsel's representations to the court as officers of the court. Harvey accuses them of

misconduct, but presents no factual information to show that the particular video clips produced should show his bloody t-shirt or a puddle of blood on the floor, or to show how the tampering was accomplished or by whom.

Accordingly, I conclude that discovery sanctions are not warranted, particularly absent some allegation that raises the likelihood of tampering above pure speculation. Sanctions may not be imposed absent a finding that there has been a violation of the discovery rules or a court order. *See generally* Fed. R. Civ. P. 37(b). Harvey's motions asking for sanctions on the grounds that the videotapes are fraudulent, (Dkt. Nos. 91, 126, 174), asking for an evidentiary hearing on the issue, (Dkt. No. 127), and asking for summonses to be issued to counsel for the VDOC Defendants requiring them to appear at said hearing (Dkt. Nos. 128, 129) are therefore DENIED.

(Dkt. No. 198 at 2–3.)

In his objections to this ruling, Harvey claims that Judge Hoppe "ignores" the "facts" set forth in Harvey's petition writ of mandamus (Dkt. No. 156). Harvey then reiterates that his "evidence" of the tampering comes from documentation in his medical chart from Nurse Woodward. (Objs. 3; *see also* Dkt. No. 234 at 2.) Specifically, in a treatment note dated July 21, 2017, at 1:15 p.m., Woodward wrote that she was "called to the 2nd floor stairway in regards to an offender altercation" and that she observed Harvey "sitting on the lower step with his head in his hands holding a shirt." (Dkt. No. 140-1, at 1.) The note, which was referenced in general terms by Judge Hoppe, then continues: "Multiple drops & puddles of blood noted in hallway, on steps & clothing." (*Id.*)[4] From this, Harvey concludes that the video clips must have been altered because he says they do not reflect the puddles or drops of blood she noted.

Harvey also insists that, contrary to Judge Hoppe's assertion, he has shown "how"

---

[4] Harvey also criticizes Judge Hoppe and suggests he was biased because he referred in the singular to a "puddle of blood" being missing, as opposed to "puddles." (Objs. 3.) As noted, the nurse's note indeed references "multiple drops & puddles of blood," but Judge Hoppe's use of the singular term, while imprecise, is not material and does not show bias.

defendants accomplished the tampering and the faking of video clips, claiming—in conclusory terms only—that they had a meeting of the minds and conspired. As further evidence of the conspiracy, he claims that it took two weeks for him to receive Judge Hoppe's order—which was mailed by the court. (Objs. 4–5.) His objections go on to make general accusations of bias against Judge Hoppe—all stemming again from his order—and to mischaracterize the record in stating that Harvey "already got rid of one bias[ed]" U.S. Magistrate Judge, the prior judge assigned to this case.[5]

The court has carefully considered Harvey's objections concerning the videoclips, as well as his arguments raised in other motions. The court concludes that they do not show that Judge Hoppe's ruling was erroneous, let alone clearly erroneous or contrary to law.

First of all, with regard to Harvey's claim of personal bias on the part of Judge Hoppe, his accusations fail to show bias. In particular, and as with his accusations of bias against the court, he points to no facts other than Judge Hoppe's rulings as evidence of bias, which are insufficient to warrant recusal. Likewise, Judge Hoppe's references to the defense attorneys as "officers of the court," is simply an accurate statement of fact and was appropriate. *See United States v. Rhynes*, 218 F.3d 310, 318 (4th Cir. 2000) ( "[L]awyers are officers of the court and, as such, they owe to the court a duty of candor.") It in no way reflects any bias on the part of Judge Hoppe.

Second, upon this court's review of the videoclips of the July 21 incident, the court sees absolutely no evidence of tampering. The first clip shows an entryway ("the Entryway Clip"), and it does not show any portion of the altercation, but it does show correctional officers and

<hr>

[5] Due to an internal reorganization at the court, Judge Hoppe was substituted as a referral judge in place of United States Magistrate Judge Ballou in this—and many other—cases. Contrary to Harvey's statement, there was never any finding of bias regarding Judge Ballou in this case.

medical personnel responding to the incident. It also shows Harvey being pushed in a wheelchair afterward. As he is pushed in the wheelchair, he is wearing a white t-shirt, but his face and the upper half of his torso are covered by a blue shirt that he is holding to his face.

The second clip shows the stairwell where the altercation occurred ("the Stairwell Clip"), although much of the altercation itself is off-camera. The Stairwell Clip clearly shows that there was an altercation and that there was blood in many places in the general vicinity. For example, there is visible blood all over the hand of Harvey's assailant in one of the frames, and there is a large area of blood on Harvey's t-shirt visible after the altercation. Moreover, there are dark spots on the floor after the altercation that were not there beforehand. Additionally, it is significant that the primary area where the altercation actually occurred was off-camera, and the floor of that area is never visible on the clip. So, in the likely event that some or most of the blood referenced by the nurse was in that area, it would not be visible on the clip in any event. Indeed, the Stairwell Clip shows a number of people gesturing toward that general area (and other areas) where the blood would have been and also shows extensive cleaning of the area afterward, including mopping of the floor.

Thus, as to Harvey's assertion that the video of the floor was somehow edited to not show the "puddles" of blood on the floor referenced in Woodward's note, there is simply no evidence of that. To the contrary, the video reflects what is likely blood on the floor and shows that there was blood on him and on Poe, the other inmate involved the altercation. In short, there is nothing to support Harvey's assertion of tampering.

As for Harvey's assertion that the Entryway Clip of him being wheeled away in the wheelchair does not show the blood all over his t-shirt and thus defendants must have altered it, the court disagrees. Comparing the two clips, the Stairwell Clip shows that nearly all of the

blood on Harvey's white shirt was on the top half of his shirt, just below his neck and in the middle of his shirt, rather than to the right or left. In the Stairwell Clip, as he leaves the area, blood is visible on a white item (which appears to be medical gauze), which he is holding to his face and covering with his blue shirt.

As Harvey appears moments later and is wheeled away in the Entryway Clip, the area of his white shirt that had visible blood on it is entirely covered by the blue shirt he is holding up to his face and the white item beneath it. Thus, the reason why the large area of blood on his white shirt, which was visible earlier on the Stairway Clip, is no longer visible is that the area is covered by the blue shirt, not because the video was somehow altered. Moreover, there are darker spots on his t-shirt closer to his stomach (and not covered by the blue shirt) as well as darker spots on the blue shirt covering his face, both of which appear to be blood, although it is not entirely clear because of the quality of the video.

In any event, based on the videos defendants have produced, it would be hard for them to deny that there was substantial blood on the floor or on Harvey's white shirt. Notably, moreover, it does not appear that defendants have ever denied that there was blood on Harvey's shirt or on the floor, a point which ties into the fact that defendants are not offering these videos for anything at all—as the court addresses next—let alone to support any contention that there was no (or little) blood on the floor or on Harvey's shirt.

In a footnote in his objections (Objs. 11 at n.1), Harvey contends that the VDOC defendants' attorneys have "refused to submit a certificate of authenticity" signed and affirmed by an independent technology expert that the clips are not fake. He reiterates this argument repeatedly in his latest filing on the issue, claiming that counsel cannot authenticate documents and that authentication is required. (*See generally* Dkt. No. 234.) In that filing, titled as a

second motion for a "required evidentiary hearing," Harvey also cites to a number of cases to support his argument that an evidentiary hearing on his request for sanctions is required.

The court disagrees that a hearing is required or that authentication of the videos is required at this time. As to a hearing, the court has already addressed the allegedly conflicting note by Nurse Woods. For the reasons already discussed, neither that note not the videoclips themselves support any inference of tampering, so as to warrant a hearing on the issue. And Harvey offers nothing but a blanket and vague allegation of conspiracy to support his allegation that tampering has occurred.

Moreover, defendants have produced the videos in response to a court order, but they have not yet offered them or used them to support any motion nor asked the court to consider them as evidence at all. Thus, unlike the cases cited in Harvey's request for a hearing (Dkt. No. 234), defendants are not "proponents of the video as evidence," at least not at this time. (*Cf.* Dkt. 234 at 3 (citing cases discussing a party's attempt to use unauthenticated evidence).) Without going into detail as to all of the cases cited by Harvey (*see id.* at 3–12), they are distinguishable. In many of them, courts were addressing either a summary judgment motion in which a party was relying on evidence only authenticated by counsel, who had no personal knowledge of the video. In others, the courts were addressing evidentiary objections at trial and concluded that documents had to be authenticated to comply with Federal Rule of Evidence 901. Those cases do not control the outcome here, which is at a very different procedural posture. In the event that defendants attempt to introduce those videos into evidence, the issue of authentication may arise. But no evidentiary hearing is required where there is nothing other than speculation to support Harvey's allegation that defendants or their counsel tampered with the videos, and defendants are not relying on those videos at all, let alone to argue (as Harvey predicts they will) that there was

not blood on the floor or on Harvey's shirt.

Lastly, as to Harvey's request for mandamus relief related to the videoclips, mandamus is not an appropriate remedy here regardless. A petition for writ of mandamus to compel a district court to act is typically filed in the appropriate appellate court. *See, e.g.*, *In re Jordan*, 242 F. App'x 912 (4th Cir. June 14, 2007). Requesting action by the district court itself is properly requested in a *motion* addressed to the district court, and Harvey has sought the same relief in motions. Moreover, "[a] writ of mandamus will not issue to compel an act involving the exercise of judgment and discretion." *Cent. S.C. Chapter, Soc. of Prof'l Journalists*, 551 F.2d 559, 562 (4th Cir. 1977). Instead, mandamus will issue "only where the duty to be performed is ministerial and the obligation to act peremptory and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable." *Id.* Here, the evidentiary hearing requested by Harvey is not clearly and indisputably demanded by the law, for the reasons already explained.[6]

For all of the foregoing reasons, Harvey's objections (Dkt. No. 221) are OVERRULED; Harvey's petition for writ of mandamus (Dkt. No. 156) and his motion for a hearing (Dkt. No. 234) are DENIED.

## C. Harvey's Motions to Amend

### 1. Motion to Amend the Amended Complaint (Dkt. No. 274)

In a recent filing, Harvey seeks leave to amend his complaint as it relates to three aspects of his case: (1) to amend the amount of relief demanded; (2) to add Arakaky and Coyner as defendants; and (3) to add a list of newly proposed claims and newly proposed defendants from

---

[6] To the extent Harvey's petition asks this court to direct that any of the defendants or their counsel take some specified action, mandamus cannot issue to enjoin state officials. *See* 28 U.S.C. § 1361; *AT & T Wireless PCS, Inc. v. Winston-Salem Zoning Bd. of Adjustment*, 172 F.3d 307, 312 n.3 (4th Cir. 1999).

the Office of the Attorney General. The motion will be denied. First of all, insofar as the motion seeks to amend the amount of relief demanded, amendment is unnecessary. If Harvey proves his entitlement to a sum greater than what is currently in his complaint, he may obtain a judgment in that higher amount. *See* Fed. R. Civ. P. 54(c) (noting that the judgment in a party's favor is not limited to the relief set forth in its pleadings); *Gilbane Bldg. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 901 (4th Cir. 1996) (characterizing Rule 54(c) as "a clarification of the fundamental point . . . that the relief to which a claimant is entitled is not limited to the relief it requested in its original demand for judgment"). Particularly in light of the denial of the rest of his motion to amend, the court believes allowing this minor (and unnecessary) amendment is not required by justice. *See* Fed. R. Civ. P. 15(a)(2) (requiring that amendment be "freely" allowed when "justice so requires").

As to his second request in the motion to amend, his request is likewise unnecessary. As discussed later in this opinion and order, Arakaky and Coyner remain named defendants; they simply have not yet been properly served by Harvey.

As to the third request, in which he seeks to add additional claims and additional parties, Harvey's motion to amend lists a number of "multiple improper actions" by opposing counsel, as well as actions and inactions by all the judges who have issued orders in this case. The court will not allow amendment to add these claims or to add additional defendants. The court notes that this case has now been pending for more than two years and there has been substantial effort expended by the current parties and by the court in addressing numerous issues. There are currently five motions for summary judgment and a motion for partial dismissal pending, and significant discovery has been conducted. To allow amendment at this late date to challenge conduct that arose during the course of the litigation would be unfair to defendants and would

render this case even more unwieldy.  Moreover, as to a number of the allegations Harvey seeks to bring as separate claims, they are discovery-related issues that the court has already resolved against him in ruling on other motions.

If Harvey wants to file additional claims concerning defendants' actions or counsel's actions in this lawsuit, he may file a separate civil action asserting those claims, although the court offers no opinion as to the potential merits of any such claims.  His motion to amend (Dkt. No. 274) is DENIED.

### 2.  Motion to Amend/Correct Docket Entry 120 (Dkt. No 278)

In the next motion (Dkt. No. 278), Harvey refers to wanting to "amend" docket entry 120, but that docket entry is the court's prior order denying him leave to amend to add Mediko, Inc. as a defendant.  His latest motion is more properly construed as a new motion to amend his complaint to add Mediko as a party.  He offers several grounds for amendment.  First, he appears to be arguing that the failure of the named Mediko defendants to provide certain discovery has hampered his ability to seek discovery from Mediko.  As to this argument, Harvey does not need to add Mediko as a party to seek discovery from it; he may issue a subpoena to obtain discoverable information from a non-party.

Harvey also seeks amendment on the grounds that he has allegedly learned information in discovery that now provides a basis for including Mediko as a defendant.  The Mediko defendants (although not Mediko itself) have filed an opposition to that motion (Dkt. No. 280), and Harvey has recently filed a lengthy reply (Dkt. No. 284).[7]

---

[7] In his reply, Harvey contends that the opposition was "illegally" filed and erroneously states that attorneys Brewer and Bernier are no longer counsel of record in this action.  (Dkt. No. 2.)  The court previously granted the motion of Brewer and Bernier to withdraw as counsel of record for Arakaky and Coyner, but that motion sought to withdraw their appearance only as to those two defendants.  Brewer and Bernier remain as counsel of record for the remaining Mediko defendants (Landauer, Hamilton, and Shipp).

The parties disagree as to whether Harvey has even stated a plausible claim. Mediko is a private corporate entity that provides medical services to VDOC inmates. As the court noted in denying Harvey's first motion to add Mediko, there is no respondeat superior liability under Section 1983. In his latest requested amendment, though, he seeks to hold Mediko liable based on a claim that "an official policy or custom" caused the alleged deprivation of Harvey's federal rights. *See generally Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999); *Cf. Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690 (1978) (local entities subject to suit "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers").

In his proposed amended complaint, Harvey points to Mediko's "policy" of awaiting doctor approval before sending a prisoner out for surgery. Harvey alleges that the delay in his obtaining treatment while awaiting doctor approval was caused by that policy, and that the delay exacerbated his injuries because, by the time he was seen by an outside physician, that physician concluded his bones had reset and Harvey was no longer a candidate for surgery. (*See generally* Dkt. No. 278 at 10–12.)

The court need not resolve the parties' dispute over whether those facts state a plausible claim against Mediko because any such claim would be barred by the applicable statute of limitations, and amendment thus futile. Thus, leave to amend must be denied. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (explaining that a court should deny leave to amend "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile") (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

Before turning to the limitations analysis, the court recognizes that Harvey previously moved—and within the limitations period—to add Mediko as a party. But when he sought amendment before, he did not seek to add Mediko based on any policy or practice. Instead, his amendment focused on the fact that Mediko employed the individual defendants. (*See* Dkt. No. 120.) Thus, the court does not view these two amendments as tied, but instead views this as Harvey's first attempt to add a policy or custom-based claim against a new party. Moreover, neither party has directly addressed the issue, but it appears that the addition of a new defendant would not relate back under Federal Rule of Civil Procedure 15(c) to the filing of the original complaint. *See Schieszler v. Ferrum College*, 233 F. Supp. 2d 796, 800 (W.D. Va. 2002) ("Rule 15(c)(3) permits a plaintiff to name a new defendant in place of an old one, but does not permit a plaintiff to name a new defendant in addition to the existing ones.") (quoting *Onan v. County of Roanoke*, 52 F.3d 321, 1995 WL 234290, at *2 (4th Cir. Apr. 21, 1995); *see* Fed. R. Civ. P. 15(c).

The limitations bar is an affirmative defense that typically must be asserted by the defendant. But where it appears on the face of the complaint (or here, proposed amended complaint) that the statute of limitations has run, the court may dismiss (or here, deny leave to amend) a claim because it fails to state a claim upon which relief can be granted. 42 U.S.C. § 1997e(c); *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656–57 (4th Cir. 2006) (recognizing same as to complaints filed *in forma pauperis*); *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 953–54 (4th Cir. 1995) (affirming *sua sponte* dismissal of claim on limitations grounds because the face of the complaint plainly revealed the existence of the defense).

Section 1983 claims brought in this court are governed by Virginia's two-year limitations period for personal injury claims. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735 (4th

Cir. 1991).  The accrual date, however, "is a question of federal law that is *not* resolved by reference to state law."  *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 388–89 (4th Cir. 2014).  Under federal law, a cause of action accrues "when the plaintiff knows or has reason to know of his injury."  *Owens*, 767 F.3d at 389.  Thus, Harvey's cause of action accrued, and the statute of limitations began to run, when he knew, or through reasonable diligence should have known, of the injury he had suffered. Harvey knew of his injury more than two years before he sought leave to amend.

Here, Harvey's proposed claim against Mediko lists the last date of Mediko's allegedly tortious conduct that injured plaintiff as February 20, 2018.  (Dkt. No. 278 at 10 (setting forth proposed claim against Mediko).)  The February 2018 date appears to rest on holding Mediko liable under respondeat superior, though,  The proper accrual date was likely much earlier, in July 2017, because the only Mediko policy he challenges is one that was utilized (to his detriment, according to him), in July 2017.

Even under the later February 2018 date, however, Harvey's amendment would be untimely.  Harvey executed his motion to amend on March 3, 2020, outside the two-year limitations period.  (Dkt. No. 278 at 12.)

Moreover, the face of the proposed complaint also shows that Harvey knew of the policy he challenges in July 2017, so the discovery rule cannot under any circumstance extend the accrual date beyond the last date he lists, in February 2018.  Even if he did not know the precise contours of the policy or its name at the time, he knew that there was such a policy in place because he cites in his complaint that he was told, at the time of his July 2017 injuries, that there is a process that has to be followed before he could get outside health care.  (Dkt. No. 278 at 11; Dkt. No. 278-1 at 4 (August 2017 Level I Grievance response to Harvey, Ex. D to proposed

amended complaint).)  Accordingly, his cause of action accrued more than two years before he

sought leave to amend to add a policy or custom claim against Mediko and such a claim is time-

barred.

The court further notes that, aside from being futile, allowing amendment at this late date

would prejudice the existing defendants, and Harvey previously has been advised that the court

would not permit piecemeal amendments.  (*See* Dkt. No. 66.)  Although the court has allowed

amendment subsequent to that admonition, it does not mean that Harvey's repeated and late-filed

requests to amend should be honored.

For these reasons, Harvey's motion to amend (Dkt. No. 278) is DENIED.

### D.  Harvey's Motions to Compel and for Sanctions, All Related to Discovery Responses from Shipp, Landauer, and Hamilton (Dkt. Nos. 231, 262, 267, 269)

Harvey, dissatisfied with the sufficiency of the discovery responses from defendants

Shipp, Landauer, and Hamilton, has filed three separate motions to compel (Dkt. Nos. 231, 262,

267), as well as a motion for sanctions against those defendants (Dkt. No. 269).

In his first motion to compel (Dkt. No. 231), Harvey complains that he had received no

discovery responses from the three Mediko defendants, but defendants' counsel responded in

opposition and stated that the responses were served on plaintiff previously and that a new copy

was sent to plaintiff shortly after the motion to compel.  (*See* Dkt. No. 238.)  Moreover,

defendants note that Rule 37(a)(1) required Harvey to meet and confer regarding any alleged

deficiencies and that he failed to do so before filing his motion to compel.  (*Id.* (citing Fed. R.

Civ. P. 37(a)(1).)  In any event, because it appears that Harvey has now been provided discovery

responses, his motion to compel (Dkt. No. 231) is DENIED AS MOOT.

The next motion to compel concerns Interrogatory #11 propounded to both Landauer and

Ship, which Harvey describes as having been "unanswered," although he again failed to meet

and confer, which alone could serve as the basis for denying his motion.[8]  In Interrogatory #11,

Harvey asked:

> Landauer and Shipp you two were both members of Mediko's
> Supervisory Staff with Landauer being Medical Director and Shipp
> as Director of Nursing . . . so, on July 21, 2017, did a nurse named
> J. Woodward (a white female) work at the Augusta Correctional
> Center's Medical Staff, that you two collectively oversaw?

(Dkt. No. 262-3 at 1.)

  In response to this motion to compel, defendants responded that they had since

supplemented their discovery responses and that the answer had not been timely provided

because counsel needed additional time to obtain information from her clients, and the answers

were due right before a holiday.  (Dkt. No. 263.)  Defendants further argued that the motion was

rendered moot by the supplemental response.  In that response, defendants answered:

> SUPPLEMENTAL ANSWER:  In answering this Interrogatory
> No. 11, Defendants state only that a nurse named Jody Woodward,
> RN, worked at Augusta Correctional Center during the July-
> August 2017 timeframe.  The remainder of Plaintiff's Interrogatory
> No. 11 calls for a legal conclusion to which no response is
> required.

(Dkt. No. 263-1 at 1.)

  In response, Harvey filed another motion to compel (Dkt. No. 267), in which he

maintains that even the supplemental response is inadequate.  Specifically, it claims that the

answer "is clearly evasive, incomplete, and totally insufficient."  (Dkt. No. 267 at 3.)  He further

accuses counsel of "attempting to hide and/or conceal relevant/pertinent information from this

case."  (*Id.*)  Harvey also seeks sanctions for defendants' failure to fully answer (Dkt. No. 269),

---

[8]  Harvey provided a letter addressed to counsel in which he argued that he had not been provided answers
to Interrogatories 11 through 25.  (Dkt. No. 262-2.)  The court finds that this was an insufficient attempt to meet-
and-confer because Harvey did not reference specifically an inadequate answer to Interrogatory No. 11.  Had he
done so, he would have learned that the answer was forthcoming and it could have prevented the filing of the motion
to compel altogether.

and contends that the "evasive" answer is further proof of the conspiracy between defendants and counsel involved in the case. In opposition to the motion to compel (Dkt. No. 270), counsel for defendants Landauer and Shipp state that those two defendants do not have any personal knowledge about whether Woodward was employed and/or worked at the facility on the specific date referenced by Harvey: July 21, 2017. They only generally remember that she was employed during the two-month time-frame of July and August. Thus, they contend that the answer they provided remains the most accurate and complete answer. (*Id.* at 2.) Having reviewed the record, the court does not believe sanctions are warranted in this circumstance, *see* Fed. R. Civ. P. 37, but it does think a fuller response to that interrogatory is warranted.

In particular, the court agrees that the supplemental response is not fully responsive because it fails to answer, or to deny knowledge, as to two issues. The first, and the only one specifically referenced in Harvey's motion to compel, is whether Jody Woodward worked at August Correctional Center on the specific date of July 21, 2017. Defendants have now denied any more specific knowledge about Woodward's status on that particular date, and so it appears there is no additional information to compel.[9] The second part of the question, which is not specifically referenced in Harvey's motion to compel, is whether Landauer and Shipp "collectively oversaw" Woodward. The relationship between Landauer and Shipp and Woodward, while it may implicate legal questions, is a factual question regarding their supervisory authority, if any, over Woodward. Accordingly, defendants Landauer and Shipp will be directed to provide a second supplemental response to Interrogatory No. 11 addressing the second question above not later than seven days after entry of this Order. The second motion to compel (Dkt. No. 267) is therefore GRANTED insofar as Landauer and Shipp will be required to

---

[9] It appears, based on the medical chart, that Woodward was the first of the medical personnel to respond after the July 21, 2017 incident in which Harvey was injured.

respond as to whether they "collectively oversaw" Woodward.

Lastly, Harvey's motion for sanctions is based not on the allegedly inadequate response to Interrogatory No. 11, but on his assertion that defendants and their counsel have submitted false answers to a number of requests for admission. (*See* Dkt. No. 269.) In his motion, he lists several requests for admissions, the responses, and then points to what he deems his "rebuttal" evidence that he says shows that defendants' responses were false. Defendants have filed a response in opposition. (Dkt. No. 275).

The court agrees with the Mediko defendants that Harvey failed to abide by the procedural requirements in either Rule 37 (by failing to meet-and-confer) or in Rule 11 (by failing to serve a motion for sanctions on opposing party and give an opportunity to cure before filing with the Court). (*See* Opp'n to Mot. for Sanctions, Dkt. No. 275.) For these reasons, Harvey's motion for sanctions (Dkt. No. 269) is DENIED.[10]

## E.  Miscellaneous Motions

### 1.  Motion to Withdraw as Counsel (Dkt. No. 237)

In a prior order, the court granted a motion by counsel for defendants for Mediko employees, then Samuel Thomas Bernier and Daniel Taylor Brewer, both of Moran Reeves & Conn PC, to withdraw from representation of Defendants Dr. Arakaky and Tammy Coyner.

---

[10]  The court further notes, however, that some of the responses to requests for admission are not at all refuted by the information provided by Harvey. As to others, the phrasing of the requests for admission leaves room for doubt as to whether or not a particular response was false. For example, Admission #2, to which Hamilton responded "Denied," states "Hamilton lied as to a material fact, when he wrongfully stated under oath that 'no documentation exists indicating that I made requests of him regarding my pain medication . . .'" (Dkt. No. 261 at 3.) Harvey argues that the denial is false and has presented evidence that, in two emergency grievances to which Hamilton responded, Harvey requested pain medication. (*See* Dkt. No. 269-1.) As is typical when a request for admission is denied, the basis for the denial is not explained. Harvey views the denial as false, but it is not clear to the court that those emergency grievances were "requests of Hamilton," or instead simply were given to Hamilton to respond to. Similarly, even if those emergency grievances are Harvey making "requests of Hamilton," Hamilton could be denying the request for admission on the grounds that he did not "lie as to a material fact," either because he did not intentionally lie or because he believes that fact is not material. In short, the alleged falsity of his answer is not apparent.

(Dkt. Nos. 168, 195 at 6.)[11]  By granting the motion, the court intended to grant all of the relief sought in that motion, but it failed to separately direct the Clerk to terminate the waivers of service returned erroneously by counsel.  Accordingly, this order will direct that relief and will also give Harvey an additional thirty days to effect service on those two individuals.

Shortly thereafter, another attorney from the same firm, Laura Mary Hooe, entered her appearance in the case and inadvertently included defendants Arakaky and Coyner in her notice of appearance.  In her motion to withdraw, counsel reiterated that her law firm does not represent those defendants.  That motion to withdraw (Dkt. No. 237) is GRANTED, and Ms. Hooe will be terminated as counsel of record for Arakaky and Coyner.

**2.  Motion for Electronic Service (Dkt. No. 235)**

In Dkt. No. 235, Harvey requests that defendant Dr. Steve Herrick be served electronically.  The Office of the Attorney General, however, has already waived service and entered and appearance on that defendant's behalf.  Accordingly, the motion (Dkt. No. 235)  is DENIED AS MOOT.

### III.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1.      As to all motions addressed herein that were previously referred to Judge Hoppe, the order of reference on those motions is WITHDRAWN.

2.      To the extent that it requests recusal, Harvey's "Notice of Complaint" (Dkt. No. 276) is DENIED.

3.      Harvey's Objections to Judge Hoppe's Order (Dkt. No. 221) are OVERRULED.

---

[11]  As explained in their motion, counsel had mistakenly entered an appearance on behalf of those two defendants, based on a miscommunication with Mediko.  Counsel, however, never had authority to represent those two individuals, who were not Mediko employees.

Harvey's related "petition for writ of mandamus" (Dkt. No. 156) and motion for an evidentiary hearing (Dkt. No. 234) are both DENIED.

4.   Harvey's motion to amend (Dkt. No. 274) is DENIED.

5.   Harvey's motion to amend, seeking to add Mediko, Inc. as a defendant (Dkt. No. 278) is DENIED.

6.   Harvey's motions to compel and motion for sanctions against defendants Hamilton, Shipp, and Landauer (Dkt. Nos. 231, 262, 267, and 269) are DENIED.

7.   Harvey's motion to compel (Dkt. No. 267) is GRANTED only insofar as defendants Landauer and Shipp shall provide a supplemental response, not later than seven days after entry of this Order, to Interrogatory No. 11 as to whether they "collectively oversaw" Woodward.

8.   Counsel Laura May Hooe's motion to withdraw (Dkt. No. 237) is GRANTED, and the Clerk shall terminate her as counsel for defendants Arakaky and Coyner only.  Additionally, the waivers of service erroneously returned on behalf of defendants Arakaky and Coyner (*see* Dkt. No. 135) are hereby STRUCK.  Harvey is  hereby given an additional thirty days from the date of this order to accomplish service those two defendants and to provide proof of such service to the court. His failure to serve them by that deadline may result in their dismissal without prejudice from this action.

9.   Harvey's motion for electronic service (Dkt. No. 235) is DENIED AS MOOT.

The motions for summary judgment by defendants Hamilton, Shipp, Landauer, and Dr. Rylak (Dkt. Nos. 170, 180, 182, and 192), as well as Harvey's motion for sanctions related to Dr. Rylak's discovery (Dkt. No. 259), all remain pending and will be addressed by other orders.

Likewise, the VDOC defendants' motion to dismiss and to sever, in which they seek dismissal of many claims against them and severance of two claims into a separate suit, also remains pending (Dkt. No. 244.) Harvey's motion for summary judgment (Dkt. No. 239) is not yet ripe, as the VDOC defendants have sought and received an extension of time to respond (Dkt. Nos. 248, 253), and the response deadline will be set after a ruling on their motion to dismiss and to sever.

The Clerk is directed to send copies of this order to the parties.

Entered: April 17, 2020.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge