IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TAMAR DEVELL HARVEY, ) | |
|     Plaintiff, ) | Civil Action No. 7:18-cv-00097 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| D. LANDAUER, *et al.*, ) | United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

*Pro se* plaintiff Tamar Devell Harvey brought this civil rights action asserting claims pursuant to 42 U.S.C. § 1983 against a number of defendants.[1] All of his claims are based on alleged events occurring during Harvey's incarceration at Augusta Correctional Center ("ACC"). Pending before the court is defendant David A. Rylak's motion for summary judgment. Because the court concludes that the undisputed allegations establish that Dr. Rylak was not deliberately indifferent to Harvey's medical needs, summary judgment in his favor is appropriate. For this reason, addressed in more detail below, the court will grant Dr. Rylak's motion for summary judgment.

I.  BACKGROUND

On July 21, 2017, Harvey was injured during an altercation with another inmate at ACC. Specifically, Harvey alleges that he was assaulted on that date by offender Poe, who used a padlock and razor blades during the attack. Afterward, Harvey was evaluated briefly at the scene and then transported to the medical unit at ACC. He was then transported to the local hospital's emergency department ("the ER"). Dr. Rylak was the ER physician who treated Harvey.

---

[1] Harvey initially asserted claims against more than two dozen defendants. As to those defendants that remain in the case, the operative complaint against the defendants represented by the Office of the Attorney General, or "the VDOC defendants," is docketed as an Amended Complaint at Dkt. No. 196. The complaint governing the claims against the remaining parties, including Dr. Rylak, is the original complaint, Dkt. No. 1, as amended by Dkt. No. 19. (Dkt. No. 195 at 7.)

Dr. Rylak examined Harvey, conducting a physical assessment, neurological assessment, and brief psychiatric assessment. He noted that the tissues around Harvey's right eye were very swollen, but he had no injuries to his eyes. He had four lacerations on the right side of his face (three that were approximately 1 centimeter long, and a fourth that was 2 centimeters long), and that part of his face was swollen and tender. On Dr. Rylak's order, Harvey received an injectable narcotic pain medication to provide prompt pain relief. Dr. Rylak then sutured all four facial wounds under local anesthesia, two sutures each for the 1cm lacerations and five for the 2cm laceration. (Rylak Aff. ¶¶ 7–11, Dkt. No. 73-1.)

Dr. Rylak ordered CT scans of Harvey's head, face, and cervical spine, which were performed, and Dr. Rylak reviewed the radiologist's report. The head and neck scans showed no bone or soft tissue injury. (*Id.*, ¶ 12.) As to the facial scan, in addition to referring to the body of his report, the radiologist listed four impressions: "1. Communicated minimally depressed fracture of the inferior aspect of the anterior wall of the right maxillary sinus. 2. Preorbital soft tissue swelling. No intraorbital abnormality. 3. Fractures of the nasal bones and possible fracture of the nasal septum; 4. Fluid in the right sphenoid sinus, concerning for fracture of its wall." (Dkt. No. 220-1, at 1–2 (Radiology Report).)

To prevent sinus infection, Dr. Rylak started Harvey on oral antibiotics. He also ordered, and Mr. Harvey received, an oral dose of Oxycodone 10mg, a narcotic pain medicine, and prescribed him additional pain medication and an antibiotic. (Rylak Aff. ¶¶ 13, 18–19.) Harvey alleges in grievances attached to his verified complaint that Dr. Rylak told Harvey that he would need "multiple operations" to fix his injuries. (*See* Compl. 1-1, at 6.) Harvey also alleges that Dr. Rylak improperly released Harvey back to Virginia Department of Corrections ("VDOC") custody, rather than admitting him to the hospital, which Harvey states was deliberately indifferent given the results of his CT scan, which showed multiple broken bones. (Compl. ¶ 11.) He asserts that Dr.

Rylak's treatment of him violated his Eighth Amendment rights because Dr. Rylak was deliberately indifferent to his serious medical needs.

For his part, Dr. Rylak avers that "Harvey's facial injuries were not life threatening and did not require admission to the hospital. His facial fractures were of the type that are regularly treated on an outpatient basis." (Rylak Aff. ¶ 14.) He notes that in his discharge instructions, he directed Harvey to call UVa neurosurgery department and August Otolaryngology Associates on Monday for the next available appointment "for further evaluation and treatment of his sphenoid sinus facture, because the sphenoid sinus lies close to the brain." (*Id.*, ¶¶ 15–16; Dkt. No. 220-1, at 3.)

In his motion for summary judgment, Dr. Rylak provides both his own affidavit and the affidavit of a VDOC official regarding his lack of a contractual or employment relationship with VDOC. Based on the undisputed facts in those affidavits, Dr. Rylak has never been employed by VDOC, and, since at least 2009, neither he nor his employer has had a contract with the state to treat prisoners. (Batley Aff. ¶¶ 4–8, Dkt. No. 193-1; Rylak Aff. ¶¶ 3, 4.) Moreover, Dr. Rylak avers, and Harvey offers no facts to dispute, that he does "not select the patients whom I treat and cannot refuse to treat patients who present for emergency care." (Rylak Aff. ¶ 2.)

## II.  DISCUSSION

### A.  Motion for Summary Judgment

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2] A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

---

[2] The court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

(1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), 56(e). All inferences must be viewed in a light most favorable to the non-moving party, but the nonmovant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## B. Dr. Rylak's Motion

Harvey's claim against Dr. Rylak is brought pursuant to 42 U.S.C. § 1983. To prevail on such a claim,

> a plaintiff must show, first, that he was deprived of a right secured by the constitution or laws of the United States, and second, that the defendant acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988).

*Conner v. Donnelly*, 42 F.3d 220, 223 (4th Cir. 1995). Dr. Rylak contends that he is entitled to summary judgment both because he did not act under color of state law and because he was not deliberately indifferent as a matter of law, so as to give rise to a viable Eighth Amendment Claim.

### 1. State Action

The parties devote much of their briefing to the state action requirement, and both discuss at length the Fourth Circuit's decision in *Conner*. There, the Fourth Circuit held that a private physician without any contractual or employment obligation with the state nonetheless acts under the color of state law by voluntarily accepting a referral to treat a prisoner. *Conner*, 42 F.3d at 223. In so holding, however, the *Conner* court specifically distinguished a case where there was

*emergency* care provided by a private entity. *Id.* at 228 (discussing *McIlwain v. Prince William Hosp.*, 774 F. Supp. 986 (E.D. Va. 1991)). The *Conner* court said the following as to *McIlwain*:

> We also distinguish the holding of the district court in *McIlwain v. Prince William Hospital,* 774 F. Supp. 986, 989–90 (E.D. Va. 1991), that the hospital did not act under color of state law in treating a prisoner rushed to the hospital for emergency care. The district court noted that "[b]y seeking emergency treatment for McIlwain [the prisoner], the prison did not delegate its duty to provide him with medical care; the Hospital, in admitting McIlwain to its emergency room, did not accept any such duty." *Id.* at 989. Although we question the court's conclusion that the prison did not delegate its constitutional obligation to the hospital, we agree that the hospital did not accept such a duty. This fact distinguishes the case from *West,* in which the Court specifically noted that the prison bore an obligation to provide adequate medical care to the prisoner, that the prison delegated its obligation to the physician, and that the physician voluntarily assumed that obligation.[6] *West,* 487 U.S. at 56, 108 S.Ct. at 2259.
>
> Because this issue is not before this Court, we do not decide today whether evidence that a physician did not voluntarily accept a state's delegation of constitutional duties should affect a court's state action analysis. We merely state that the holding in *McIlwain* is not inconsistent with our decision in this case.

*Conner*, 42 F.3d at 228.

Lower courts have addressed the question left unanswered in *Conner*, with differing results. Some courts within this circuit and elsewhere have held that a private hospital's emergency room physician does not act under color of state law in treating a prisoner brought into the ER. *E.g.*, *Smith v. Thornton*, No. 5:17-CT-03045-D, 2019 WL 1009439, at *3 (E.D.N.C. Feb. 7, 2019) (holding that an emergency room physician did not act under color of state law in treating a prisoner brought into the ER), *report and recommendation adopted*, No. 5:17-CT-3045-D, 2019 WL 1003633 (E.D.N.C. Feb. 28, 2019); *Humphrey v. Howard*, No. 5:17-CT-03123-D, 2018 WL 4137071, at *2 (E.D.N.C. Feb. 14, 2018) (same), *report and recommendation adopted*, No. 5:17-CT-3123-D, 2018 WL 4113344 (E.D.N.C. Aug. 28, 2018); *accord Brown v. Pangia*, No. 11 CIV. 6048(AT), 2014 WL

5

2211849, at *3–4 (S.D.N.Y. May 27, 2014); *Sykes v. McPhillips*, 412 F. Supp. 2d 197, 203 (N.D.N.Y. 2006).

By contrast, at least one judge of this court has concluded that a private ER physician who treated prisoner-plaintiff acted under color of state law because in doing so, he "exercise[d] power that was traditionally the exclusive prerogative of the state." *Whitten v. Atyia*, No. 7:17cv00465, 2019 WL 1430005, at *8 (W.D. Va. Mar. 29, 2019), *aff'd*, 776 F. App'x 817 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 939 (2020). The *Whitten* court nonetheless granted summary judgment for the physician on the grounds that he was not deliberately indifferent. *See id.* at *9–10.

This court finds it unnecessary to resolve the issue of state action in this case. Even assuming that Dr. Rylak acted under color of state law, he is nonetheless entitled to summary judgment because he was not deliberately indifferent, as the court discusses next.

**2. Deliberate Indifference**

"It is beyond debate that a prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Gordon v. Schilling*, 937 F.3d 348, 356 (2019). To establish an Eighth Amendment claim based on deliberate indifference to an inmate's medical needs, the inmate must show that (1) he has a medical condition that has been "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" and (2) the defendant "had actual knowledge of the plaintiff's serious medical needs and the related risks, but nevertheless disregarded them." *Id.* at 356–57. The first component is an objective inquiry, and the second is subjective. *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017).

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate

6

in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). To qualify as deliberate indifference, the health care provider's treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

Furthermore, it is well recognized that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." *Webb v. Hamidullah*, 281 F. App'x 159, 166 (4th Cir. 2008). Likewise, a plaintiff's mere disagreement with a prescribed course of treatment is insufficient to establish an Eighth Amendment claim of deliberate indifference. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (finding that a prisoner's claim "is essentially a disagreement between an inmate and a physician over the inmate's proper medical care, and we consistently have found such disagreements to fall short of showing deliberate indifference"). If a medical provider has a legitimate medical reason for a certain course of treatment, an inmate's disagreement with the treatment is not sufficient to succeed on an Eighth Amendment claim. *Rush v. Vandevander*, Civil Action No. 7:08CV00053, 2008 WL 495651, at *2 (W.D. Va. Feb. 21, 2008) (citing *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)); *see also Taylor v. Barnett*, 105 F. Supp. 2d 483, 488 (E.D. Va. 2000).

Applying those standards here, the court will assume that Harvey's injuries would satisfy the objective prong of his Eighth Amendment claim. However, no reasonable factfinder could conclude that Harvey could establish the second because the undisputed facts show that Dr. Rylak was not deliberately indifferent toward Harvey's serious medical needs. Dr. Rylak examined Harvey, and he ordered and reviewed CT scans. He stitched Harvey's wounds, electing to use a type of suture that would not have to be removed. He provided him with immediate pain relief in the form of a shot and a pill before he left the ER, and he wrote him prescriptions for a pain medication and an antibiotic. He ultimately discharged Harvey with instructions to call both a

neurosurgeon and an ENT physicians' group on Monday—the next business day—to ask for the first available appointment. He certainly did not ignore Harvey's injuries or provide evidently inadequate treatment.

Harvey asserts that Dr. Rylak should have admitted him to the hospital, and he argues that Dr. Rylak was deliberately indifferent for sending him back to VDOC custody. Basically, Harvey's argument is that, because he had broken bones, and Dr. Rylak treated only his facial lacerations but did not "treat" those broken bones, Dr. Rylak was deliberately indifferent. But Dr. Rylak has averred that Harvey's injuries were not life-threatening, could be treated on an outpatient basis, and did not require his admission to the hospital. Harvey disagrees with that medical judgment, but he presents nothing other than his own conclusory assertion to show that an ER physician must immediately treat such broken bones. First of all, there are cases to the contrary. *See, e.g.*, *Riles v. Buchanan*, 656 F. App'x 577, 582 (2d Cir. 2016) (concluding that prison physicians were not deliberately indifferent for failing to treat "multiple nose fractures of the right and left nasal bone, mildly displaced" and noting evidence "that such injuries ordinarily heal without medical intervention"). Even if Dr. Rylak could be deemed negligent in discharging Harvey or in failing to do more to treat Harvey's injuries, his actions do not amount to deliberate indifference. In short, the treatment he provided was not "so grossly incompetent, inadequate, or excessive as to shock the conscience," *Miltier*, 896 F.2d at 851.

For these reasons, Harvey's Eighth Amendment claim against Dr. Rylak fails, and Dr. Rylak's motion for summary judgment must be granted.

## C. Motion for Sanctions

Harvey previously moved for sanctions against Dr. Rylak and his counsel, a motion that was denied. (*See also* Dkt. No. 198 at 5–7 (prior order explaining reasons why sanctions are not warranted).) He now has filed a second motion for discovery sanctions against Dr. Rylak and his

8

counsel for alleged perjury during the discovery proceedings and for mischaracterizations of the law in briefs submitted to the court. The court has reviewed Harvey's allegations, and it concludes that sanctions are not warranted.

The primary act of "perjury" is based on two statements that Harvey says conflict and thus show perjury. The first is an unsworn statement in the memorandum in support of Dr. Rylak's first motion for summary judgment, stating: "Upon receipt and review of the radiologist's report of the CT Scans, Dr. Rylak determined that Mr. Harvey sustained facial and nose fractures of the type that were not life-threatening and could be successfully treated by medical specialists as an outpatient." (Dkt. No. 73 at 2.) The second is Dr. Rylak's purported response to Harvey's interrogatory number 7:

> Interrogatory: Dr. Rylak due to the merit that your ordered C/T Scan revealed multiple serious abnormalities why wasn't my forehead fractures addressed in that same facial C/T Scan?
>
> Answer: Dr. Rylak did not review or interpret the CT Scan. He is not a radiologist.

(Dkt. No. 259 at 3 (Harvey's motion for sanctions setting forth interrogatory and alleged response).) Harvey alleges that the two statements are clearly inconsistent, because one statement says Dr. Rylak "reviewed the radiologist's report of the CT scan," and the other sworn statement states that he did not "review the CT scan." Harvey is incorrect. The distinction is subtle, but it appears to the court that Dr. Rylak is simply stating that he did not review the CT scan itself or interpret it; the radiologist did that. But he did review the radiologist's report of the CT scan. The court finds nothing inconsistent in those two statements. Nor is Dr. Rylak denying that he knew of the fractures identified in the radiologist's report, as Harvey suggests.

Harvey also takes issue with portions of the legal discussion in Dr. Rylak's memorandum in support of his motion for summary judgment, contending that Dr. Rylak's counsel misrepresented to the court certain aspects of the cases he discussed.

9

The court has reviewed the materials Harvey challenges, but concludes that nothing in the memorandum or otherwise in the record suggests that sanctions would be appropriate here. Accordingly, having considered the record as it pertains to sanctions, the court declines to impose sanctions on Dr. Rylak or his counsel. Harvey's second motion for sanctions, therefore, will be denied.

### III.  CONCLUSION

For the reasons stated above, Dr. Rylak's motion for summary judgment will be granted and he will be dismissed from this case. Harvey's motion for sanctions will be denied. An appropriate order will be entered.

Entered: May 15, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge