IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TAMAR DEVELL HARVEY, | ) | |
| Plaintiff, | ) | Civil Action No. 7:18-cv-00097 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| D. LANDAUER, *et al.*, | ) | United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

*Pro se* plaintiff Tamar Devell Harvey brought this civil rights action asserting claims pursuant to 42 U.S.C. § 1983 against a number of defendants, including a group the court previously has referred to loosely as the "VDOC Defendants."[1] All of Harvey's claims are based on alleged events occurring during his incarceration at Augusta Correctional Center ("ACC").

Addressed in this opinion is a motion by the VDOC Defendants (sometimes referred to in this opinion simply as "defendants") in which they ask the court to dismiss a number of Harvey's claims and to sever two of his claims into two separate lawsuits. (Dkt. No. 244.) Harvey has filed a response in opposition. (Dkt. No. 254.) For the reasons set forth herein, the court will grant in part and deny in part the motion to dismiss, and deny without prejudice the motion to sever.

Additionally, in light of the changes to Harvey's claims resulting from this order, Harvey's motion for summary judgment (Dkt. No. 239), to which defendants had obtained an extension of time to respond pending a decision on the motion to dismiss and sever, will be denied without prejudice to his ability to refile such a motion as it relates only to his remaining claims.

---

[1] Harvey initially asserted claims against more than two dozen defendants. As to those defendants that remain in the case, the operative complaint against the VDOC Defendants, is docketed as an Amended Complaint at Dkt. No. 196. Aside from the VDOC Defendants who have filed the motion to dismiss, the only other defendants that remain in the case are Dr. Arakaky, who has not yet been served, and Tammy Coyner, for whom counsel from the Office of the Attorney General just entered an appearance on July 1, 2020. The claims against those two defendants are governed by the original complaint (Dkt. No. 1), as amended by Dkt. No. 19. (Dkt. No. 195 at 7.)

## I. BACKGROUND

**A.    Factual Background[2]**

Harvey's claims arise primarily from two separate incidents in which he was assaulted by a fellow prisoner. The first of these occurred on July 21, 2017, when Harvey was attacked by another offender, Poe, who used a padlock and razor blade during the attack. Harvey suffered injuries, including lacerations to his face, and was taken to the emergency room at the local hospital, where he received stiches and medical tests were performed. Later the same day, he was returned to ACC, where he was then kept in ACC's medical infirmary and under observation for 17 days: from July 21 through August 7.

Harvey alleges that certain defendants should be held liable for failing to protect him from Poe; others of his claims relate to the treatment or alleged lack of care by non-medical VDOC staff while he was in the infirmary after the attack, as well as defendants' failure to provide treatment for his broken nose and for dental injuries he suffered in the attack. Additionally, he asserts a claim related to the confiscation of three Bibles on the date of the attack.

The second primary incident involved an alleged assault and rape of Harvey by his cellmate, Offender Monroe, which occurred on October 24, 2017. Again, Harvey complains that certain of defendants failed to protect him from this attack, either because of actions taken on the day of the attack or because of risks known to them or policies they put in place that made the attack likely.

Harvey's amended complaint also alleges violations of his rights by some of the VDOC Defendants related to other incidents on different dates. These include, for example, a refusal to give him toilet paper on one occasion, interference with Harvey's legal documentation and requests

---

[2] Not all of these facts are in the Amended Complaint containing the claims against the VDOC Defendants. Some come from Harvey's separate amended complaint against medical providers—many of whom have since been dismissed or have had their motions for summary judgment granted—and some come from affidavits submitted in support of previous motions for summary judgment. Additional facts not in either of the amended complaints are set forth here only to provide context to Harvey's claims, but the court does not consider them in ruling on the motion to dismiss and to sever.

for postage, and a refusal of one defendant to provide him with a white bed sheet. Lastly, his amended complaint asserts several claims based on specific defendants' responses to his grievances about these or other events.

## B. Harvey's Claims

In their motion to dismiss, defendants state that they interpret Harvey's amended complaint as asserting sixteen claims. In his response, Harvey takes issue with defendants' identification of his claims. For example, he contends that defendants have misidentified certain claims and improperly included certain defendants in claims.[3]

In comparing Harvey's amended complaint to the list of claims in the motion to dismiss and sever, it is true that the defendants' list does not follow the exact numbering system used by Harvey. In particular, defendants break down what Harvey lists as Claim 2 into two claims (Two and Three), thereby increasing the numbering in his remaining claims. Likewise, they break down Harvey's Claim 9 into two claims (Ten and Eleven). Nonetheless, defendants' list of claims is a proper recitation of Harvey's claims, does not omit any of his claims, and makes sense to the court. For this reason, and for ease of reference in addressing the motion to dismiss and sever, the court will utilize defendants' list of Harvey's claims.

As laid out by defendants, Harvey's amended complaint includes the following sixteen claims:

**Claim One:** Defendant Burch violated Harvey's Eighth Amendment rights by failing to protect Harvey from an assault by Offender Poe at ACC on July 21, 2017. (Dkt. No. 196, at 17.)

**Claim Two:** Between July 21 and 25, 2017, Defendants Whitlock, MacDaniel, and Peale violated Harvey's Eighth Amendment rights by denying him certain necessities at ACC. (*Id.* at 18.)

---

[3] According to Harvey, for example, VDOC Defendants treated his Claim 8 as Claim 9, his Claim 9 as Claim 11, and his Claim 10 as part of Claim 12. (Pl.'s Resp. to Mot. Dismiss & Sever 9, Dkt. No. 254.)

**Claim Three:** Between July 21 and 25, 2017, Defendants Whitlock, MacDaniel, and Peale violated Harvey's Eighth Amendment rights by refusing him medical care outside of ACC. (*Id.* at 18.)

**Claim Four:** From July 21, 2017, through February 20, 2018, Defendants Whitlock, Russell, Woodson, MacDaniel, Peale, and Connor (sometimes spelled Conner) violated Harvey's Eighth Amendment rights by refusing him medical care outside of ACC for his front tooth and nose. (*Id.* at 18–19.)

**Claim Five:** Defendant Whitlock violated Harvey's First Amendment rights by taking and/or refusing Harvey possession of his Bibles on July 21, 2017. (*Id.* at 19.)

**Claim Six:** Defendants Whitlock, Russell, and Woodson failed to protect Harvey from an assault by Offender Poe at ACC on July 21, 2017. (*Id.*)

**Claim Seven:** Defendants Virginia Department of Corrections and the Commonwealth of Virginia violated Harvey's Eighth Amendment rights by refusing him surgery for his nose for twenty (20) months. (*Id.* at 20.)

**Claim Eight:** Defendants MacDaniel and Peale violated Harvey's First Amendment rights by denying him access to the grievance procedure at ACC. (*Id.* at 21.)

**Claim Nine:** Defendant LaCour violated Harvey's Eighth Amendment rights by refusing to give him a white bed sheet. (*Id.*)

**Claim Ten:** Defendant Herrick violated Harvey's Eighth Amendment rights by finding his grievances unfounded. (*Id.* at 22.)

**Claim Eleven:** Defendant Herrick violated Harvey's Eighth Amendment rights by refusing to approve Harvey's nose surgery. (*Id.*)

**Claim Twelve:** Defendant Lewis violated Harvey's Eighth Amendment rights by failing to protect Harvey from a rape by his cellmate on October 24, 2017. (*Id.* at 22–23.)

**Claim Thirteen:** Defendant Fridley violated Harvey's Eighth Amendment rights by refusing to give him toilet paper on August 13, 2017. (*Id.* at 23.)

**Claim Fourteen:** Defendant Connor violated Harvey's Eighth Amendment rights by rejecting his grievances and failing to protect him from an assault on an unspecified date. (*Id.* at 24.)

**Claim Fifteen:** Defendant Woodson violated Harvey's First Amendment rights by ordering various ACC employees to stop witnessing Harvey's legal documentation and/or fulling his requests for postage and, further, retaliated against Harvey by having him transferred from ACC to Greensville Correctional Center because Harvey had filed multiple grievances and lawsuits. (*Id.* at 25.)

**Claim Sixteen:** Defendant Clarke violated Harvey's Eighth Amendment rights by creating a "state danger" for Harvey. (*Id.*)

(Mem. Supp. Mot. to Dismiss 2–3, Dkt. No. 245.)

In their motion, defendants ask for the dismissal of eleven claims: Claims Two, Three, Four, Six, Seven, Eight, Ten, Thirteen, Fourteen, Fifteen, and Sixteen, all for failure to state a claim. As to the remaining five claims (Claims One, Five, Nine, Eleven, and Twelve), defendants ask that the court sever Claims One and Twelve from this action and establish a new, separate action for each, leaving only Claims Five, Nine, and Eleven in this case. (*Id.* at 3.)

## II. DISCUSSION

### A. Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–63 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the nonmoving party." *Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano*, 521 F.3d at 302. *Pro se* complaints are afforded a liberal construction. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006).

### B. Official Capacity Damages

Defendants first move for dismissal of any claims against them for monetary damages in their official capacities. The court will grant that relief because Harvey may not obtain money damages from defendants in their official capacities under § 1983. Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*

5

*v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, all claims for money damages against the VDOC Defendants in their official capacities will be dismissed.

**C.     Claim Two**

Claim Two alleges that defendants Whitlock, MacDaniel, and Peale violated Harvey's Eighth Amendment rights from July 21 to 25, 2017, because they denied him the right to clean and sanitary living conditions.  Specifically, Harvey alleges that these defendants knew that his personal hygiene items were taken from him, but they did not allow him to shower and instead forced him to wear his bloody VDOC jumper for those five days.

The Eighth Amendment protects prisoners from cruel and unusual living conditions.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  But "the Constitution does not mandate comfortable prisons," and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society."  *Id.* at 347–49.  To sustain an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted).  To satisfy the first element, the prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions.  *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995).

The conditions described by Harvey do not constitute the type of extreme deprivation of a basic human need that can satisfy the objective element of a conditions claim.  Harvey argues that he suffered a risk of harm because he could not clean his wounds, but he was in the infirmary and receiving medical treatment during that five-day period.  Moreover, courts have held that the deprivation of a shower or being in dirty clothing for similar (or longer) periods of time are not

6

sufficiently serious to state an Eighth Amendment living conditions claim. *E.g.*, *Davenport v. DeRobertis*, 844 F.2d 1310, 1316–17 (7th Cir. 1988) (holding that allowing inmates in a segregation unit only one shower per week was "constitutionally sufficient" and did not constitute an Eighth Amendment violation); *Johnson v. Fields*, No. 2:14-cv-38-FDW, 2017 WL 5505991, at *10 (W.D.N.C. Nov. 16, 2017) ("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to maintain an Eighth Amendment claim."); *Walker v. Dart*, No. 09 C 1752, 2010 WL 669448, at *4 (N.D. Ill. Feb. 19, 2010) ("Being denied clean clothes for two weeks, though unpleasant, is not a deprivation serious enough to support an Eighth Amendment claim."); *Blackburn v. South Carolina*, No. 0:06-2011-PMD-BM, 2009 WL 632542, at *17 (D.S.C. Mar. 10, 2009) (concluding that ten days without a shower when first placed in a segregation unit, followed by an average of one shower per week thereafter, was not a constitutional deprivation); *see also Shakka*, 71 F.3d at 165 (finding no Eighth Amendment violation where prisoner was not permitted to shower for three days after feces was thrown on him because he was given materials to clean himself and his cell). Consistent with the foregoing cases, the court concludes that Harvey has failed to state a claim under the Eighth Amendment for which relief can be granted.[4]

Moreover, Harvey does not allege any facts to show that his inability to shower or change into clean clothes for those first days after the attack by Poe caused him any injuries, let alone "significant physical or emotional harm, or a grave risk of such harm." *See Shakka*, 71 F.3d at 166. Therefore, his complaint fails to "raise a right to relief above the speculative level" as required to state a claim under *Twombly*.

For these reasons, the court will dismiss Claim Two.

---

[4] Although Harvey alleges that these defendants knew that he did not have his personal hygiene items, he does not allege that they knew he was not permitted to shower, nor does he state that he did not have access to water to clean himself. Moreover, Harvey's response does not address defendants' assertion that Claim Two fails to state a claim.

7

### D. Claims Three and Four

Claim Three alleges that defendants Whitlock, MacDaniel, and Peale violated Harvey's Eighth Amendment rights from July 21 to 25, 2017, by refusing him medical care outside of ACC. In Claim Four, Harvey alleges that these same three defendants, as well as defendants Russell, Woodson, and Connor, violated Harvey's Eighth Amendment rights from July 21, 2017, through February 20, 2018, by refusing him medical care outside of ACC for his front tooth and nose. He alleges that these defendants knew of his serious medical needs and that their failure to refer him for outside care resulted in permanent disfigurement and "serious nerve" damage. He expressly states that he voiced his concerns to them, including his concerns about the nerve damage to his front tooth, but that they refused to provide him with medical care.

As to Claim Three, defendants contend that Harvey's claims are entirely conclusory and, to the extent that his assertion is that he disagreed with the medical care he received at ACC, that does not qualify as a cognizable Eighth Amendment deliberate indifference claim. Defendants also argue that, as non-medical personnel,[5] they are entitled to rely on the judgment of medical personnel as to what treatment an inmate requires. (Mem. Supp. Mot. Dismiss 7–8.)

Defendants are correct that, as a general matter, "non-medical prison personnel are entitled to rely on the expertise of health care providers." *Krug v. Loranth*, No. 1:13-cv-01409-DCN, 2014 WL 4955365, at *7 (D.S.C. Sept. 29, 2014) (citing *Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008)), *aff'd*, 599 F. App'x 512 (4th Cir. 2015). Noting this principle, this court and others have dismissed deliberate indifference claims against prison administrators who relied on treatment decisions by medical doctors and other medical personnel. *E.g.*, *Muhammad v. Smith*, No. 7:16CV00034, 2016 WL 1464640, at *4 (W.D. Va. Apr. 12, 2016). As explained in *Muhammad*,

---

[5] Harvey does not identify any of these individuals as medical personnel, and in fact has expressly identified most of them as non-medical personnel (correctional officers, a lieutenant, assistant Warden, etc.).

8

prison "administrators are entitled to rely on the medical judgment and expertise of the medical professionals charged with providing care to [the prisoner] . . . . It is not the function of the court, or prison administrators, to second guess the good faith treatment decisions of licensed physicians." *Id.* (citing *Shakka*, 71 F.3d at 167).

The court also is aware, based on the summary judgment evidence it has reviewed in conjunction with motions filed by medical personnel, that medical personnel made at least some of the treatment decisions for Harvey during the relevant time-period. The court also is aware that during the time-period referenced in Count Two, Harvey was housed in ACC's infirmary and was closely monitored by medical personnel. Nonetheless, based *solely* on the allegations in the amended complaint (to which the court is limited in ruling on the motion to dismiss), the court cannot conclude that Harvey has failed to adequately state a claim. In particular, it is unclear how much of a delay, if any, was caused by the VDOC Defendants' refusal to refer Harvey for treatment and exactly what decisions, if any, each of them made concerning whether to refer him. There also is nothing in the amended complaint that supports an assertion that the defendants, in fact, relied on medical personnel to determine Harvey's course of treatment. Accordingly, the motion to dismiss Claims Three and Four will be denied.

**E.   Claim Six**

Claim Six alleges that three defendants (Whitlock, Russell, and Woodson) all failed to protect Harvey from the assault by Offender Poe. Specifically, Harvey alleges that they were previously informed in writing that Harvey "had received verbal threats of serious bodily harm by the hands of multiple prisoners." (Am. Compl. 18.)

To hold a prison official liable under § 1983 for a failure to protect, a plaintiff must establish that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) the defendant prison official had a "sufficiently culpable state of mind," one of "deliberate

indifference." *Farmer*, 511 U.S. at 834. Deliberate indifference is "somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995). Further, in order to succeed on a failure-to-protect claim, a plaintiff must show that the harm suffered was objectively serious, *i.e.*, he must show he suffered a "serious or significant physical or emotional injury." *Danser v. Stansberry*, 772 F.3d 340, 346 (4th Cir. 2014).

Harvey clearly suffered serious injury, so the objective element is not at issue here. Instead, defendants contend that plaintiff has failed to set forth allegations showing "deliberate indifference" on the part of any of these three defendants. An inmate may prove deliberate indifference through direct or circumstantial evidence, and "[d]irect evidence of actual knowledge is not required." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). The plaintiff may satisfy the deliberate indifference element with evidence that the challenged circumstances created a "substantial risk" of harm that "was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Id.* Even without direct evidence, "an injury might be so obvious that the factfinder could conclude that the [official] did know of it because he could not have failed to know of it." *Id.*

To be sure, the facts Harvey alleges to support the deliberate indifference element are not overwhelming. He simply alleges that they knew that Poe was a "violent gang member" and that defendants were "given" a "written complaint that [Harvey] had received verbal threats of serious bodily harm by the hands of multiple prisoners." (Am. Compl. 19.) And the mere fact that an assailant was a known violent offender based on gang membership is insufficient absent some evidence that the defendants "were subjectively aware that this inmate was likely to attack" Harvey. *See Fuller v. Cty. of Charleston*, 444 F. Supp. 2d 494, 498 (D.S.C. 2006). Similarly, Harvey's

10

allegations about his written complaint are fairly vague. But the Supreme Court has made clear that it is not necessary that the defendant know the plaintiff was "especially likely to be assaulted by the specific prisoner who eventually committed the assault," so long as the defendant was aware of "an obvious, substantial risk to inmate safety." *Farmer*, 511 U.S. at 843. And in some circumstances, the plaintiff's membership in a particular group that is frequently singled out for attack, may be sufficient.[6] *Id.* at 843–44.

Although Harvey's amended complaint does not contain a significant amount of detail as to exactly what threat was conveyed to these defendants, he states that they were aware and told in writing of the potential threats to him by multiple prisoners, which could well include Poe. Moreover, he emphasizes in his reply that his claims (referenced in his amended complaint) about the VDOC policy of allowing "mass movement" of prisoners, and particularly allowing violent gang members to mingle with at-risk prisoners like him, creates a substantial danger of risk of an attack, and defendants should have known of that risk to him. In short, although Harvey's claims may not survive summary judgment, the court concludes that he has plausibly alleged sufficient factual matter to allow the claims to go forward at this time.

**F.  Claim Seven**

Claim Seven asserts claims against the Commonwealth of Virginia and VDOC, both of whom have Eleventh Amendment Immunity from suit and thus are not proper defendants as to Harvey's § 1983 claims.[7] Indeed, it is well settled that neither the Commonwealth of Virginia nor any governmental entity acting as an arm of the Commonwealth, such as the VDOC, is a "person"

---

[6] Although the allegation does not appear in Harvey's amended complaint, in his opposition to the motion to dismiss, Harvey states that he is a "gay and effeminate prisoner" who was at special risk of assault simply by virtue of this fact. *See Randolph v. Maryland*, 74 F. Supp. 2d 537, 542 (D. Md. 1999).

[7] This claim does not seek any prospective injunctive relief, and the exception set forth in *Ex parte Young*, 209 U.S. 123, 130–31 (1908), which allows official capacity claims under § 1983 where a plaintiff seeks only prospective, injunctive relief, is inapplicable here.

11

subject to suit under § 1983. *Will*, 491 U.S. at 71 ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Thus, Harvey's claims against both the Commonwealth and VDOC fail, and Claim Seven must be dismissed.

### G. Claims Eight and Ten

In Claim Eight, Harvey alleges that defendants MacDaniel and Peale violated his First Amendment rights by denying him access to the grievance procedure, although he attempts to couch the claim as one under the Eighth Amendment. Specifically, he says that these defendants were deliberately indifferent toward his medical and dental needs because they "intercept[ed]" and "unlawfully trash[ed]" his informal complaint forms. He claims that they violated VDOC policies in interfering with the grievance process. Similarly, in Claim Ten, Harvey alleges that defendant Herrick was deliberately indifferent to Harvey's Eighth Amendment rights by finding all of Harvey's grievances unfounded

The allegations in both of these claims fail to state a claim under clear Fourth Circuit precedent. Specifically, the Fourth Circuit held in *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994), and reiterated more recently in *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533 (4th Cir. 2017), that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Id.* at 541; *see Adams*, 40 F.3d at 75 ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Relying on *Adams*, district courts, including this one, have repeatedly held that a prison official's failure to comply with a grievance procedure is not actionable under § 1983. *E.g.*, *Brown v. Va. Dep't of Corr.*, No. 6:07-CV-33, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) ("[T]here is no liability under § 1983 for a prison administrator's response to a grievance or appeal."); *Oliver v. Gray*, No. 7:09-CV-00004, 2009 WL 366150, at *2 (W.D. Va. Feb. 12, 2009), *aff'd*, 360 F. App'x 417 (4th Cir. 2010) ("Because a state grievance procedure does not confer any substantive right upon prison

12

inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."). Accordingly, Claims Eight and Ten will be dismissed.

**H.     Claim Thirteen**

Claim Thirteen alleges that defendant Fridley refused to give Harvey toilet paper when Harvey was moved to a new cell in August 2017, instead telling Harvey to "use a sock." (Am. Compl 23.) This resulted in Harvey being forced "to spend two days with a large amount of external feces on [his] backside." (*Id.* at 24.) While certainly unpleasant, a lack of toilet paper for a short period of time does not rise to the level of an Eighth Amendment violation because it does not satisfy the objective prong of a living conditions claims. *Canterbury v. W. Reg'l Jail Auth.*, No. 3:18-CV-01440, 2019 WL 6545328, at *13 (S.D.W. Va. Nov. 7, 2019) (reasoning that although an extended deprivation of hygiene items that causes injury to an inmate might establish an Eighth Amendment violation, the short-term deprivation of such items—including soap and toilet paper—without any resulting injury does not), *report and recommendation adopted*, No. CV 3:18-1440, 2019 WL 6598349 (S.D.W. Va. Dec. 4, 2019); *Binns v. Clarke*, No. 7:12-cv-00162, 2012 WL 1439258, at *3 (W.D. Va. Apr. 25, 2012) (concluding that plaintiff's allegation that he was not given access to water, toilet paper, soap, toothpaste, or a toothbrush while in a "strip cell" for three days did not rise to the level of an Eighth Amendment violation); *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn 1989) (addressing claim that inmates in one part of the jail were occasionally not furnished toilet paper, towels, sheets, and blankets for seventy-two hour stays (which sometimes lasted longer) and reasoning that "[s]hort term deprivations of toilet paper . . . and the like do not rise to the level of a constitutional violation"). The court agrees with these courts that the short-term deprivation of toilet paper, especially absent any allegation of harm or serious risk of harm as a result, does not give rise to an Eighth Amendment claim. Claim Thirteen will therefore be dismissed.

### I. Claim Fourteen

Claim Fourteen alleges that defendant Connor violated Harvey's Eighth Amendment rights both by rejecting his grievances and by failing to protect him from an assault on an unspecified date. As noted, to prevail on such a claim, Harvey must show that he suffered a "serious or significant physical or emotional injury," *Danser*, 772 F.3d at 346, and that the defendant had a "sufficiently culpable state of mind," one of "deliberate indifference." *Farmer*, 511 U.S. at 834.

Defendants seek dismissal of the failure-to-protect claim on the grounds that Harvey fails to adequately allege anything other than potential knowledge of a general risk of harm by Connor. Additionally, defendants point out that Harvey alleges in his complaint that defendant Connor responded to his grievance by stating that copies were given to other prison officials, so he alleges that she forwarded his concerns of assault o other prison officials. Thus, pursuant to Harvey's own allegations, Connor did not disregard or fail to reasonably respond to an alleged risk of an attack against Harvey.

The court agrees with defendants that Harvey's vague assertions of what knowledge Connor may have had and what she steps she may have failed to take do not plausibly state a failure-to-protect claim. In short, his allegations simply fail to plausibly allege that she was deliberately indifferent.[8]

### J. Claim Fifteen

In Claim Fifteen, Harvey alleges that defendant Woodson violated Harvey's First Amendment rights because he ordered several ACC employees to stop witnessing Harvey's legal documentation and/or fulfilling his requests for postage. Harvey also claims that he was

---

[8] For the same reasons that Claims Eight and Ten were dismissed, moreover, any claims against Connor based solely on her response to the regular grievance do not state a constitutional claim and are subject to dismissal.

14

transferred from ACC to Greensville Correctional Center in retaliation for his filing of multiple grievances and lawsuits.

This claim is subject to dismissal because Woodson's alleged actions, without more, do not state a claim for interference with Harvey's right of access to the courts. Inmates have a constitutional right to reasonable access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 351–53 (1996); *Bounds v. Smith*, 430 U.S. 817, 838 (1977). The right of access to the court "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury,* 536 U.S. 403, 415 (2002). Thus, in order to state a constitutional claim of denial of access to the courts, a plaintiff must allege facts showing that the challenged prison policy or official action has actually "hindered his efforts to pursue" a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351. Specifically, the plaintiff must identify in his complaint a "nonfrivolous," "arguable" legal claim, along with the potential remedy that claim sought to recover, that was lost as a result of the defendant's alleged interference with the plaintiff's right of access. *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002) (quoting Casey, 518 U.S. at 353). Moreover, "the fact that an inmate may not be able to litigate in exactly the manner he desires is not sufficient to demonstrate the actual injury element of an access to courts claim." *Burke v. Clarke*, No. 16-cv-365, 2018 WL 1512615, at *5 (W.D. Va. Mar. 27, 2018). Because Harvey has failed to identify any claim that was dismissed or that he lost the right to litigate as a result of Woodson's alleged interference, this claim must be dismissed.

Similarly, as to the allegedly retaliatory transfer, Harvey fails to adequately state a claim against Woodson. To succeed on his § 1983 retaliation claim, Harvey must establish that (1) he engaged in protected First Amendment activity, (2) "the alleged retaliatory action adversely affected his protected speech," and (3) a but-for causal relationship existed between the protected activity and the retaliatory act. *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015).

15

Harvey has alleged the first element, because prisoners have a "First Amendment right to be free from retaliation for filing a grievance" under the prison's established grievance procedure. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). For purposes of this opinion, the court will assume, without deciding, that a transfer to a different prison could satisfy the second element of a retaliation claim, which requires an action by defendant that "would likely deter a person of ordinary firmness from the exercise of First Amendment rights," *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).

Harvey has not pled sufficient facts, however, to plausibly allege the third element of his retaliation claim. To establish the third element, a plaintiff must show that the protected activity was the but-for cause of the adverse action alleged. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015); *Gregg-El v. Doe*, 746 F. App'x 274, 275 & n.2 (4th Cir. Jan. 3, 2019) (citing to *Foster* in addressing the causation standard in the context of a prisoner's retaliation claim). Harvey alleges, in conclusory terms, that the reason for Woodson's decision to transfer him was retaliation, but he presents no factual allegations to plausibly support this assertion. In short, his allegations fail to plausibly allege the "rigorous" but-for standard of causation. *See Raub*, 785 F.3d at 885 ("[O]ur causal requirement is rigorous." (internal quotations and citations omitted)). Thus, Harvey's retaliation claim against Woodson fails and must be dismissed. *See Adams*, 40 F.3d at 74 (summarily dismissing retaliation claim as insufficient because it consisted of merely conclusory allegations and no facts to show retaliatory motivation); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (noting that courts must treat an inmate's claim of retaliation by prison officials "with skepticism").

For all of these reasons, Claim Fifteen will be dismissed.

**K.     Claim Sixteen**

In his final claim—Claim Sixteen—Harvey alleges that defendant Clarke violated his Eighth Amendment rights by creating a "state danger" for Harvey. Harvey's opposition to the motion to dismiss, moreover, devotes a number of pages to his theory that the assaults against him were the result of the state-created danger. (*See generally* Pl.'s Resp. to Mot. Dismiss & Sever 7–8, 10–13, 28.)  While a party may not amend his pleadings through briefing, *see S. Walk at Broadlands Homeowners' Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013), Harvey's amended complaint references the VDOC policy, which he alleges is promulgated and known by Clarke, of allowing "mass movement" of prisoners, which allow violent gang members like Poe to come into contact with at-risk individuals like Harvey. He also alleges that Clarke failed to enforce proper patdown/shakedown procedures, to provide adequate levels of staffing and security, and failed to install and/or update VDOC monitoring systems, all of which contributed to one or the other of his attacks.

Again, this claim may not survive summary judgment, but the court cannot say that it fails to plausibly state a claim against Clarke. Accordingly, Claim Sixteen will not be dismissed.

**L.     Motion to Sever Claims One and Twelve**

Defendants also seek to sever Claims One and Twelve from the claims that remain in this case. Each of those claims is a specific claim against a single defendant, alleging a failure to protect Harvey from the two assaults. Specifically, Claim One alleges that defendant Burch failed to protect Harvey from Offender Poe on July 21, 2017. Claim Twelve alleges that defendant Lewis failed to protect Harvey from the assault and rape at ACC by his cellmate, Offender Monroe, three months later, on October 24, 2017.

Defendants contend that these claims are misjoined because they are brought against different defendants and do not arise "out of the same transaction, occurrence, or series of

17

transactions or occurrences" as required to make joinder proper under Rule 20.  Defendants also contend that allowing the claims to go forward together would deprive each defendant of a fair trial, and they argue that allowing all of Harvey's remaining claims to go forward in a single suit would allow him to circumvent the Prison Litigation Reform Act's ("PLRA") filing fee requirements and three-strike rule.  Harvey counters that the claims are properly joined, and he also contends that it would be unfair to require him to pay additional filing fees.

First of all, it is clear that Count One is properly in this lawsuit.  It remains related to other claims brought by Harvey, such as those concerning the alleged denial of medical care for injuries sustained in the July assault.  Accordingly, the court will not sever Count One into a different lawsuit.  Moreover, the court is allowing the failure to protect claims against Clarke and others (which relate to both attacks) to go forward at this time.  In light of that alleged connection, it is arguable that the two attacks are related and a "series of occurrences," Fed. R. Civ. P. 20, and thus the defendants and claims are not misjoined.  Although the court has discretion to sever the claims even if they are not misjoined, Fed. R. Civ. P. 21; *Spencer, White & Prentis, Inc. of Conn. v. Pfizer, Inc.*, 498 F.2d 358, 362 (2d Cir. 1974) ("[J]ustification for severance is not confined to misjoinder of parties"), it declines to do so at this time.[9]

The court understands defendants' concern regarding the risk of prejudice to Burch and Lewis from having the claims against them tried together.  If and when the case is set for trial and both of these claims are going forward (particularly if they are going forward without the

---

[9] Harvey's argument seems to be that he cannot be required to pay separate filing fees to pursue his claims, but he is incorrect.  As noted, the court has discretion to sever claims, even if they are not misjoined.  Fed. R. Civ. P. 21; *Spencer, White & Prentis, Inc. of Conn.*, 498 F.2d at 362.  The court would have been justified in severing Harvey's claims into multiple lawsuits at the beginning of the action, even if that had meant that he would have to pay multiple filing fees.  As noted, his claims arise from multiple different events and were brought against many defendants.  Nonetheless, at this stage of the case, the claims have been significantly narrowed, and the court sees little benefit to severing claims now.

overarching claims against the supervisory personnel), then the court will consider any renewed request for severance for purposes of trial at that time.

### III.  CONCLUSION

For the reasons stated above, the VDOC Defendants' motion to dismiss will be granted in part and denied in part and the motion to sever will be denied.  In light of that ruling, moreover, Harvey's motion for summary judgment will be denied without prejudice.  An appropriate order will be entered.

Entered: July 7, 2020.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge